UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:22-cv-61437-WPD

SCOTT FRYBARGER,

    Plaintiff,

v.

JOSEPH SALEMME, LUXY
TECHNOLOGIES, INC., and
ONE WAY LIMO.COM, INC,

    Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff, SCOTT FRYBARGER (the "Plaintiff"), by and through undersigned counsel, hereby files this Amended Complaint against the Defendants, JOSEPH SALEMME, ("SALEMME"), ONE WAY LIMO.COM, INC., ("OWL") and LUXY TECHNOLOGIES, INC., ("LUXY"), (collectively referred to as "Defendants"), and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship. This action was originally filed by Plaintiff in State Court in Broward County, Florida, and removed by Defendants, SALEMME and OWL to this Federal Court based upon diversity of citizenship. The amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Personal jurisdiction exists over all Defendants because they either engage or have engaged in business in Florida and specifically because they have engaged in business with Plaintiff in Florida.

1

3. Venue is proper in this District under 28 U.S.C. 1391(a), based on Plaintiff's residence, Defendants' past or present conduct of business in Florida, and where a substantial portion of the events giving rise to the cause of action occurred.

## THE PARTIES

4. Plaintiff is an individual who resides in Manatee County, Florida, and is otherwise *sui juris*.

5. Defendant, OWL, upon information and belief, is a foreign corporation formed under the laws of Delaware, with its principal business office in Shelton, Connecticut, and which, at all times relevant, did and/or still does conduct business in Florida with Plaintiff and/or with others and is otherwise *sui juris*.

6. Defendant, LUXY, upon information and belief, is a foreign corporation formed under the laws of Delaware with its principal business office in Shelton, Connecticut, and which, at all times relevant, did and/or still does conduct business in Florida and is otherwise *sui juris*.

7. Defendant, SALEMME is an individual residing in Shelton, Connecticut, and which, at all times relevant, did and/or still does conduct business in Florida with Plaintiff and/or others, and is otherwise *sui juris*.

8. At all times material hereto, SALEMME used and dominated OWL and LUXY to such a degree, that they had no separate practical existence from him or from each other, and said entities were SALEMME's and OWL's alter-ego, as addressed in more detail *infra*.

## ALLEGATIONS COMMON TO ALL COUNTS

### The OWL Relationships

9. Plaintiff and SALEMME have been friends since childhood and each reposed trust and confidence in each other for many years.

10. Prior to 2014, SALEMME formed and operated OWL. OWL's business contracted with limousine providers to offer customers discounted limousine fares in Connecticut, New York, and New Jersey. In 2014, OWL's business was struggling and on the verge of collapse.

11. Since 2014 and before, SALEMME has owned and continues to own, substantially all of the ownership interests in OWL.

12. In or about the winter of 2014, SALEMME began communicating (mostly by phone and in-person in Florida) with Plaintiff about OWL, its business opportunities, its possible improvement, and expansion to a nationwide "discounted limousine exchange" that included Florida, and whether Plaintiff might help or asset by investing in OWL and agreeing to manage and assist in the improvement and expansion of the software and the operations of OWL.

13. In 2014 and in reliance upon their friendship and upon SALEMME's representations and experience, Plaintiff, Salemme and OWL agreed (both verbally and in writing) that Plaintiff would invest $50,000 for 50% ownership of OWL and that Plaintiff would manage and assist in the improvement and expansion of the software and operations of OWL. *See* **Exhibit "A"**, Term Sheet and the Shareholders Agreement agreed by Plaintiff, SALEMME and OWL.

14. In 2014 and 2015 and in reliance upon SALEMME's continued representations that delivery to Plaintiff of his 50% ownership interest in OWL was merely a matter of paperwork, Plaintiff continued to make financial investments in managing and substantially improving the software and operations of OWL.

**The Settlement**

15. On or about 2016, and after Plaintiff had made a significant financial investment and had also provided sweat equity for the benefit of OWL and had personally managed the substantial improvements and operational effectiveness and efficiency of the

software, as well as the daily operations of OWL, SALEMME reneged upon his representations and agreements with Plaintiff, and SALEMME refused to deliver, or to permit OWL to deliver, to Plaintiff his 50% ownership interest in OWL (the "Dispute").

16. To induce Plaintiff to settle the Dispute, SALEMME and OWL offered to pay certain amounts to Plaintiff upon OWL achieving certain "gross revenue" thresholds and upon SALEMME selling a portion of his ownership in OWL (the "Payment Promises").

17. To further induce Plaintiff to settle the Dispute, SALEMME and OWL offered to provide semi-annual reports necessary to determine if, and when, such payment conditions were met ("Financial Reporting").

18. In reliance on SALEMME's and OWL's representations and the Payment Promises and the Financial Reporting, Plaintiff agreed to settle all claims that Plaintiff had against SALEMME and OWL stemming from the Dispute.

19. On or about June 28, 2016, vie electronic signatures in Florida, Plaintiff, SALEMME, and OWL entered into a Settlement Agreement, dated June 28, 2016 (the "Agreement") in settlement of such disputes. A true, correct, and complete copy of the Agreement is attached hereto as **Exhibit "B".**

**Payments and "Gross Revenues"**

20. Pursuant to the Agreement, Sections 2 and 3, Plaintiff was and is entitled to certain payments upon the achievement of certain conditions as follows:

  a. $60,000 was due and payable to Plaintiff from SALEMME upon signing of the Agreement. This amount was paid in full on or about June 28, 2016.

  b. $250,000 was due and payable to Plaintiff from OWL upon OWL achieving $10 million in "gross revenues"). "Gross Revenues" was defined as follows:

  > "any monies or anything of value paid for any service or product provided by One Way Limo com or any Operating Affiliate (as hereinafter

       defined), any sales proceeds, contract payments, proceeds, receipts, moneys or value of any kind in connection with any sale of ownership interest In, or any merger involving, or any sale of assets, businesses or operations of, One Way Limo.com or any Operating Affiliate, and any monies or other things of valued received by One Way Limo.com or any Operating Affiliate pursuant to any agreement which allows any third party to use any proprietary software owned by One Way limo.com, but shall not include any "non-OWL" revenues, meaning revenues which are received by a third party entity or an Operating Affiliate which are not brokered, arranged, reserved or booked by or through One Way Limo.com (or its system/software), including any revenue directly received by such third party entity or Operating Affiliate from any third party customer which revenue is generated as a result of the third party entity or Operating Affiliate's licensing agreement to utilize any reservation software owned by One Way Limo.com."

In the event such amount was not paid within 30 days of the date due, the amount was increased to $375,000.

   c. $250,000--- was due and payable to Plaintiff from SALEMME upon SALEMME selling or transferring interests in OWL for more than $1 million. In the event such amount was not paid within 30 days of the date due, the amount was increased to $375,000. The total amount due and payable under this paragraph 10, items b and c, was limited to $250,000, or $375,000, as stated.

   d. $500,000 was due and payable to Plaintiff upon OWL achieving $20 million in "gross revenues." In the event such amount was not paid within 30 days of the date due, the amount was increased to $750,000.

### Financial Reporting

21.    The Financial Reporting was memorialized in Section 6 to the Agreement, which states the following:

> One Way Limo.com **shall, on or before July 1st and February 1st of each year provide to Scott Frybarger** and Gary Johnson **reports of cumulative gross revenue of One Way Limo.com and any Operating Affiliate, for the six month period ending June 30th and December 31st prior to the due dates,** as well as any issuance, sales or purchases of ownership interest to Joseph Salemme and/or any immediate family member of Joseph Salemme, which reports shall include gross revenues from June 1, 2014.

*Id.* (emphasis added).

22. At all times material, it was understood between the Parties that SALEMME and OWL would cause the Financial Reporting to be delivered to Plaintiff in Florida, which is where the Plaintiff resides.

23. There were no conditions or requirements to the delivery of the Financial Reporting.

### "Operating Affiliate"

24. The Agreement further authorized OWL to enter into franchise, distribution, licensing, partnership or similar agreements with any third party, including an Operating Affiliate, to provide services normally provided by OWL in any other state or country. *See Id*. at 2(d).

25. Per the Agreement, any "gross revenues" received by any franchisee, distributor, licensee, partnership or similar person or entity located in the States of New York, Connecticut and New Jersey, and any such person or entity located outside the States of New York, Connecticut and New Jersey in which SALEMME or an immediate family member of his holds an interest in said person or entity are included in the calculation of Gross Revenues. *Id.*

26. The Agreement defined "Operating Affiliate" as any entity or person which purchases, licenses, operates, or uses any proprietary software of OWL in New York, Connecticut and New Jersey (or if outside those states, in which SALEMME or an immediate family member holds an interest in such entity). *Id.*

27. On or about November 2019, SALEMME and other shareholders and directors of OWL formed an "Operating Affiliate" – LUXY with substantially the same shareholders, directors, and officers as OWL, to which OWL purportedly transferred substantially all of its assets and liabilities.

28. Given that SALEMME holds an interest in LUXY, LUXY is subject to the same Financial Reporting as OWL.

29. Further, upon information and belief, the transfer of substantially all of the assets and liabilities of OWL to LUXY constituted a "fraudulent transfer" and "securities fraud" under applicable federal and state laws that was intended by SALEMME, OWL and LUXY to defraud, hinder and diminish the contractual rights of PLAINTIFF as a shareholder and/or creditor of OWL.

**Defendants Breach the Financial Reporting Requirements of the Agreement**

30. From the inception of the Parties' execution of the Agreement, SALEMME and OWL have failed to deliver these semi-annual reports timely (only delivering cursory reports after, and only upon, the demand of Plaintiff), which cursory reports appear to be inconsistent and incomplete ("Cursory Reports").

31. SALEMME and OWL caused the Cursory Reports to be delivered to Plaintiff in Florida.

32. Discrepancies in the Financial Reporting include, but are not limited to, "Gross Revenues" and the facts surrounding credit card charges and payments to limousine providers appear to be understated, misstated, or intentionally withheld and the terms and conditions surrounding the transfer of OWL's assets and liabilities to LUXY have been withheld ("Financial Discrepancies").

33. Plaintiff has requested, and SALEMME, OWL, and LUXY have refused, the delivery of the required Financial Reporting to Plaintiff and justification for the Financial Discrepancies.

34. Defendants have created deliberate, unnecessary, unwarranted, and unreasonable obstacles to providing Plaintiff with the necessary information for Plaintiff to determine if, and when, amounts might be due and payable to Plaintiff under the Agreement.

35. Defendants have demonstrated bad faith and the intention to deprive Plaintiff of his contractual right to the previously agreed upon Financial Reporting and the payments due to Plaintiff under the Agreement.

36. Defendants have demonstrated bad faith and the intention to deprive Plaintiff of his contractual right to the previously agreed upon Financial Reporting and the payments due to Plaintiff under the Agreement as further evidenced by the "fraudulent transfer" to LUXY of substantially all of the assets and liabilities of OWL.

37. Defendants have engaged in a scheme and a continued pattern of 'fraud in the inducement," "fraudulent transfers," and "securities fraud" under applicable federal and state laws in Defendants' efforts to defraud, hinder and diminish the contractual rights of Plaintiff as a shareholder and/or creditor of OWL and/or LUXY.

38. All conditions precedent to filing this action have been fulfilled, to the extent not excused, discharged, satisfied, or waived by Defendants' conduct.

39. Plaintiff has retained the undersigned counsel to represent him in this matter and has agreed to pay reasonable fees for services being provided on his behalf.

## COUNT I
## BREACH OF CONTRACT
### (Against all Defendants)

Plaintiff re-alleges the allegations set forth in Paragraphs 1 through 39 as if fully set forth herein.

40. The Agreement between Plaintiff, SALEMME, OWL, and LUXY (which was acting on its own behalf, and as an agent and/or alter ego of the other Defendants herein) was a binding written contract under Florida law.

41. The Agreement evidences, on its face, the elements of mutual assent, consideration, and the existence of the material terms of the contract.

42. Defendants have failed to comply with Plaintiff's requests for information to which Plaintiff is entitled under the agreement and which is necessary to determine if, and when, amounts might be due and payable to Plaintiff under the Agreement.

43. The information requested by Plaintiff was and is necessary for Plaintiff to determine if, and when, amounts might be due and payable to Plaintiff under the Agreement.

44. Plaintiff is entitled to the information requested and to a full accounting and to full payment of all amounts due Plaintiff under the Agreement.

45. These actions by Defendants constitute material breaches of the Agreement.

46. Plaintiff has been damaged by these actions of Defendants.

47. Plaintiff has obligated itself to pay the undersigned attorneys a reasonable fee for their services herein. Plaintiff is entitled to recover said attorney's fees and costs pursuant to the Agreement.

WHEREFORE, Plaintiff requests that this Court grant the following relief:

(a) Determine and require that Defendants provide to Plaintiff the information requested by Plaintiff and a full accounting of if, and when, any amounts might have been, or be, due to Plaintiff by Defendants, and that Defendants continue to provide similar information after judgment until all amounts due to Plaintiff under the Agreement are paid in full;

(b) Determine and award to Plaintiff damages in an amount equal to all amounts due and payable to Plaintiff under the Agreement through and including the date of judgment;

(c) Determine and award pre-judgment interest on such damages based upon their due dates and the statutory rates of interest applicable on such due dates;

(d) Determine and award post-judgment interest on such damages at applicable statutory interest rates from the date of judgment until paid in full;

(e) Determine and award to Plaintiff an amount equal to the reasonable attorneys' fees and costs incurred by Plaintiff in this action; and

(f) Such other relief as this court deems appropriate.

## COUNT II
### FRAUD IN THE INDUCEMENT FOR DAMAGES
### (Against all Defendants)

Plaintiff re-alleges the allegations set forth in Paragraphs 1 through 39 as if fully set forth herein.

48. This is an action for Fraud in the Inducement for Damages.

49. Defendants (which were acting on its own behalf, and as an agent and/or alter ego of the other Defendants herein) misrepresented their intent to provide Plaintiff with the Financial Reporting, and to make such disclosures pursuant to the Agreement from the outset of the Agreement never intending to honor the terms of the Agreement.

50. Defendants knowingly made such misrepresentations for the purpose of inducing Plaintiff to execute the Agreement never intending to honor the terms.

51. But for Defendants' misrepresentation, Plaintiff would not have executed the Agreement.

52. At the time such representations were made, Defendants knew that they were false.

53. Moreover, during their contractual dealings with Plaintiff, Defendants knowingly withheld and failed to disclose material information required as part of the Financial Reporting, *to wit*, "Gross Revenues" and the facts surrounding credit card charges and payments to limousine providers that appear to be understated, misstated or intentionally withheld, and the terms and conditions of the "fraudulent transfer" to LUXY of substantially all of the assets and liabilities of OWL.

54. Defendants have engaged in a scheme and a continued pattern of 'fraud in the inducement," "fraudulent transfers," and "securities fraud" under applicable federal and state laws in Defendants' efforts to defraud, hinder and diminish the contractual rights of Plaintiff as a shareholder and/or creditor of OWL and/or LUXY.

55. Plaintiff reasonably relied upon Defendants' misrepresentations to his detriment.

56. As a proximate result of Defendants' fraudulent inducement/representations, and Plaintiff's reasonable reliance upon such representations, Plaintiff suffered injury, including but not limited to, financial loss, all to his damage and according to proof exclusive of interest, costs, and attorney's fees.

57. This is precisely the type of situation in which one, such as Plaintiff, is entitled to the rights and redress accorded to a party who has been fraudulently induced. As the Florida Supreme Court has explained: "Fraud in the inducement presents a special situation where parties

to a contract appear to negotiate freely...but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1240 (Fla. 1996).

WHEREFORE, Plaintiff, SCOTT FRYBARGER, prays that this Honorable Court enters judgment in his favor and against Defendants for:

(a) All damages allowable under Florida law, including, but not limited to, compensatory damages, incidental and consequential damages, according to proof;

(b) Disgorgement of profits received from the sale of OWL and LUXY and all other "ill-gotten gains" obtained by Defendants;

(c) Costs of Suit; and

(d) Such other or further relief as the Court may deem proper and just.

## COUNT III
## RESCISSION OF CONTRACT
(**Against all Defendants**)

Plaintiff re-alleges the allegations set forth in Paragraphs 1 through 39 as if fully set forth herein.

58. Defendants SALEMME, OWL and LUXY (which was acting on its own behalf, and as an agent and/or alter ego of the other Defendants herein) misrepresented their intent to provide Plaintiff with the Financial Reporting, and to make such disclosures pursuant to the Agreement, never intending to honor the terms of the agreement.

59. Defendants have engaged in a scheme and a continued pattern of 'fraud in the inducement," "fraudulent transfers," and "securities fraud" under applicable federal and state

12

laws in Defendants' efforts to defraud, hinder and diminish the contractual rights of Plaintiff as a shareholder and/or creditor of OWL and/or LUXY.

60. Defendants knowingly made such misrepresentations and engaged in such pattern of conduct for the purpose of inducing Plaintiff to execute the Agreement and to defraud, hinder and diminish the contractual rights of Plaintiff as a shareholder and/or creditor of OWL and/or LUXY.

61. Equity requires that the Agreement be rescinded, and the restoration to the status quo of the Parties before the execution of the Agreement.

62. Any inability of Plaintiff to restore is caused by, and solely the result of, fraud perpetrated by Defendants, and is excused inasmuch as such inability is the result of the wrongful conduct of Defend.

63. Rescission is warranted and should be granted so long as an appropriate remedy would do equity to both parties. Coercion, duress and fraud in the inducement (the latter being alleged in this case) are all independent grounds justifying rescission of a contract. *E.g., Griffin Bros. Co. v. Mohammed,* 918 So. 2d 425 (Fla. 4th DCA 2006).

WHEREFORE, Plaintiff, SCOTT FRYBARGER, prays that this Honorable Court enter Judgment in his favor and against the Defendants for:

    a. Declare the actions of Defendants to include a scheme and continued pattern of 'fraud in the inducement," "fraudulent transfers," and "securities fraud" under applicable federal and state laws sufficient to warrant rescission of the Agreement;

b. Rescind the Agreement between the Parties and require the issuance or transfer to Plaintiff from Defendants of 50% of the total outstanding ownership interests in OWL and LUXY;

c. All damages recoverable under law, according to proof;

d. Disgorgement of profits received from the sale of OWL and all other "ill-gotten gains" obtained by Defendants;

e. Reasonable Attorney's Fees;

f. Costs of Suit; and

g. Such other and further relief as the Court may deem proper and just.

## RESERVATION TO SEEK PUNITIVE DAMAGES

Plaintiff, SCOTT FRYBARGER reserves his right to seek the award of punitive damages against Defendants, JOSEPH SALEMME, LUXY INC. and ONE WAY LIMO.COM, INC. upon a showing of evidence pursuant to Florida Statute § 786.72.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of September 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

    Dated this 14th day of September, 2022.

                                                */s/ Michael L. Feinstein*
                                                Michael L. Feinstein, Esq.