**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SCOTT FRYBARGER,
    *Plaintiff,*

    v.

JOSEPH SALEMME and ONE WAY
LIMO.COM, INC.,
    *Defendants.*

No. 3:22-cv-1652 (VAB)

**RULING AND ORDER ON MOTION FOR JOINDER AND MOTION TO AMEND
COMPLAINT**

Scott Frybarger ("Plaintiff") has sued Joseph Salemme and One Way Limo.com, Inc.

("OWL") (collectively, "Defendants") for breach of contract and fraud in the inducement. First

Am. Compl., ECF No. 27 (Oct. 21, 2022) ("Am. Compl.").

Mr. Frybarger has moved to join Luxy Technologies, Inc. ("Luxy") as a Defendant. He

has also moved to amend the Complaint to include Luxy and to include several claims under

Connecticut state law. Mot. for Joinder of Luxy, ECF No. 54 (Mar. 24, 2023) ("Mot. for

Joinder"); Mot. to Amend/Correct Am. Compl., ECF No. 55 (Mar. 24, 2023) ("Mot. to Amend").

For the reasons explained below, the Court **GRANTS** the motion to join Luxy as a party

Defendant. The Court also **GRANTS** the motion for leave to amend the Complaint.


**I.      FACTUAL AND PROCEDURAL BACKGROUND**

    A.  Factual Allegations

Mr. Frybarger and Mr. Salemme allegedly have been friends since childhood. Am.

Compl. ¶ 9.

Before 2014, Mr. Salemme allegedly formed and operated OWL, a business that contracted with limousine providers to offer customers discounted limousine fares in Connecticut, New York, and New Jersey. *Id.* ¶ 10. Mr. Salemme allegedly has owned and continues to own substantially all of the ownership interests in OWL. *Id.* ¶ 11. In 2014, OWL allegedly was struggling and on the verge of collapse. *Id.* ¶ 10.

In winter of 2014, Mr. Salemme allegedly began to communicate with Mr. Frybarger about potential business opportunities through OWL, including whether Mr. Frybarger might help by investing in OWL and agreeing to manage and assist in the improvement of OWL's software and operations. *Id.* ¶ 12.

In reliance upon their friendship and Mr. Salemme's representations and experience, Mr. Frybarger allegedly agreed to invest $50,000 in exchange for 50% ownership of OWL. *Id.* ¶ 13. He also allegedly agreed to manage and assist in the improvement and expansion of the software and operations of OWL. *Id.* The agreement allegedly was formed both verbally and in writing between Mr. Frybarger, Mr. Salemme, and OWL. *Id.*

In 2014 and 2015, Mr. Salemme allegedly continued to represent to Mr. Frybarger that delivery of the 50% ownership interest in OWL was "merely a matter of paperwork[.]" *Id.* ¶ 14. In reliance on these representations, Mr. Frybarger allegedly continued to make financial investments in managing and substantially improving the software and operations of OWL. *Id.*

On or about 2016, Mr. Salemme allegedly reneged on the agreement with Mr. Frybarger and refused to deliver, or to permit OWL to deliver, the 50% ownership interest in OWL. *Id.* ¶ 16.

On or about June 28, 2016, Mr. Frybarger, Mr. Salemme, and OWL allegedly entered into a Settlement Agreement ("the Agreement") to settle the dispute. *Id.* ¶ 19; Ex. B. As part of

the Agreement, the Mr. Salemme and OWL allegedly offered to pay certain amounts to Mr.

Frybarger upon OWL achieving certain "gross revenue" thresholds and upon Mr. Salemme

selling a portion of his ownership in OWL. *Id.* ¶ 16. Mr. Salemme and OWL also allegedly

agreed to provide semi-annual financial reports to Mr. Frybarger. *Id.* ¶ 17. Mr. Frybarger

allegedly agreed to settle all claims against Defendants stemming from the dispute. *Id.* ¶ 18.

The Agreement also allegedly authorized OWL to enter into franchise, distribution,

licensing, partnership, or similar agreements with any third party, including an Operating

Affiliate, to provide services in another state or country. *Id.* ¶ 24. Any "gross revenues" allegedly

received by any entity under this clause was to be calculated in the calculation of gross revenues

under the Agreement, if: (1) the entity was located in New York, Connecticut, or New Jersey, or

(2) the entity was located outside of New York, Connecticut, or New Jersey, but Mr. Salemme or

an immediate family member held an interest in such entity. *Id.* ¶ 25. An "Operating Affiliate"

allegedly was defined as any entity or person which purchases, licenses, operates, or uses any

proprietary software of OWL in New York, Connecticut, and New Jersey, or outside of those

states if Mr. Salemme or an immediate family holds an interest in such entity. *Id.* ¶ 26.

In or about November 2019, Mr. Salemme and other shareholders and directors of OWL

allegedly formed Luxy, an Operating Affiliate with substantially the same shareholders,

directors, and officers as OWL, to which OWL purportedly transferred substantially all of its

assets and liabilities. *Id.* ¶ 27. Because Mr. Salemme allegedly holds an interest in Luxy, it

allegedly is subject to the financial reporting requirements of the Agreement. *Id.* ¶ 28. This

transfer allegedly was intended by Mr. Salemme, OWL, and Luxy to defraud, hinder, and

diminish the contractual rights of Mr. Frybarger as a shareholder and creditor of OWL—and it

therefore constituted a "fraudulent transfer" and "securities fraud." *Id.* ¶ 29.

Since the execution of the Agreement, Defendants allegedly have failed to deliver the required financial reports timely, and have delivered reports that contain "financial discrepancies," including understated or misstated gross revenues (including incorrect charges and payments), and intentionally withheld terms and conditions surrounding the transfer of assets and liabilities to Luxy. *Id.* ¶ 32. Mr. Frybarger allegedly has requested the delivery of the required financial reports and explanations of the financial discrepancies, but Defendants have refused. *Id.* ¶ 33.

Defendants have therefore allegedly deliberately created obstacles to Mr. Frybarger's ability to obtain the information necessary to determine what amounts might be due or payable under the Agreement. *Id.* ¶ 34.

Defendants have allegedly further demonstrated "bad faith" and an intention to "defraud, hinder, and diminish" Mr. Frybarger's contractual rights. *Id.* ¶ 37.

B.  Procedural Background

On June 14, 2022, Mr. Frybarger filed an action in the Circuit Court of the Seventeenth Judicial District in and for Broward County, Florida. Not. of Removal, ECF No. 1 ¶ 1 (Aug. 1, 2022) ("Not. of Removal"); *see Scott Frybarger v. Joseph Salemme and One Way Limo.com, Inc.*, Case No. CACE-22-008739.

On August 1, 2022, Defendants removed the action to the United States District Court for the Southern District of Florida based on diversity jurisdiction. Not. of Removal; *see Scott Frybarger v. Joseph Salemme, et al.*, Case No. 0:22-cv-61437-WPD.

On September 15, 2022, Mr. Frybarger filed an Amended Complaint, adding Luxy as a Defendant. Am. Compl., ECF No. 17.

On September 15, 2022, Defendants filed a motion to dismiss. Mot. to Dismiss, ECF No. 18.

On September 16, 2022, the court dismissed the motion without prejudice because it did not comply with the requirements of Southern District of Florida Local Rule 7.1(a)(3), which requires the moving party to certify that it has conferred, or made reasonable effort to confer, with the parties affected, in a good faith effort to resolve the dispute. Order, ECF No. 20.

On September 28, 2022, Defendants filed an amended motion to dismiss for lack of jurisdiction, or in the alternative, a motion to transfer venue for forum non conveniens. Am. Mot. to Dismiss, ECF No. 21.

On October 11, 2022, Mr. Frybarger responded to the motion to dismiss. Pl. Response to Am. Mot. to Dismiss, ECF No. 24.

On October 21, 2022, Mr. Frybarger filed another amended complaint. Am. Compl.

On December 28, 2022, the district court granted in part and denied in part the amended motion to dismiss the amended complaint. The court found that it had subject matter jurisdiction over the case. Order on Defs. Am. Mot. to Dismiss, *Frybarger v. Salemme*, No. 22-61437 (S.D. Fla. Dec. 28, 2022), ECF No. 33 at 10 ("Order on MTD"). It also found that it had personal jurisdiction over Mr. Salemme and OWL, but that it lacked personal jurisdiction over Luxy. *Id.* at 21. Finally, the court found that transfer to this District was appropriate, in significant part because Luxy would be subject to personal jurisdiction here, thereby avoiding the risk of duplicative litigation and allowing the action to continue as to all Defendants. *Id.* at 28.

On February 28, 2023, this Court dismissed Luxy based on the order by the District Court for the Southern District of Florida, dismissing the party for lack of jurisdiction. Order, ECF No. 51.

On March 24, 2023, Mr. Frybarger filed a motion for joinder of Luxy. Mot. for Joinder. On the same day, he also filed a motion to amend the Complaint to include Luxy as a Defendant and include causes of action under Connecticut state law. Mot. to Amend.

On May 1, 2023, Defendants filed memorandums in opposition to the motion for joinder and motion for leave to amend. Mem. in Opp. to Mot. for Joinder, ECF No. 59 ("Opp. to Mot. for Joinder"); Mem. in Opp. to Mot. to Amend, ECF No. 60 ("Opp. to Mot. to Amend").

On May 15, 2023, Plaintiff filed a reply to Defendants' opposition to the motion for joinder and motion for leave to amend the complaint. Reply Mem. in Support of Mot. for Joinder, ECF No. 61 ("Reply").

On May 17, 2023, with the Court's permission, Mr. Salemme and OWL filed a sur-reply in opposition to the motion for joinder and the motion for leave to amend the complaint. ECF No. 64 ("Sur-Reply").

## II.     STANDARD OF REVIEW

### A.  Motion for Joinder

Under Rule 21 of the Federal Rules of Civil Procedure, "the court may at any time, on just terms, add or drop a party." When considering whether adding a party is appropriate, courts generally refer to the standards governing joinder under Federal Rule of Civil Procedure 20. *Smulley v. Mutual of Omaha Bank*, No. 3:14-cv-997 (JAM), 2016 WL 6208251, at *3 (D. Conn. Oct. 24, 2016).

Rule 20 of the Federal Rules of Civil Procedure states that parties may be joined as defendants if: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences;" or (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). When making this determination, courts are directed to take "a broad view, not requiring an absolute identity of factual backgrounds . . . but only a logical relationship between them." *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 166 (S.D.N.Y. 2009).

Generally, under Rule 20, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties," and "joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Moreover, "considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 557 (S.D.N.Y. 2013) (internal quotations marks omitted) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).

B. <u>Motion to Amend</u>

Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within 21 days of service or the earlier of 21 days after service of a required responsive pleading or motion under Rule 12 (b), (e) or (f). Fed. R. Civ. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended complaint. Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id.*

The decision to grant leave to amend under Fed. R. Civ. P. 15 is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310

7

F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)").

## III.    DISCUSSION

Mr. Frybarger has moved to join Luxy as a Defendant and to amend the Complaint to add Luxy and several claims under Connecticut state law. Defendants have opposed both the joinder of Luxy and the addition of certain state law claims, which it argues are unsupported by the allegations contained in the complaint. *See Foman*, 371 U.S. at 182.

The Court will first address the question of joinder, and then will turn to the question of amending the Complaint to add state law claims.

### A.   Joinder of Luxy

Mr. Frybarger argues that Luxy should be joined as a party because it is a necessary party to this action, based on its role as recipient of the allegedly fraudulent transfer from OWL. Mem. of L. in Support of Mot. to Join, ECF No. 54-1, at 2 (Mar. 24, 2023) ("Mem."). He further argues that Luxy's joinder will not affect diversity and would not prejudice Defendants, given the early stage of the litigation. *Id.*

Defendants argue that the motion for joinder of Luxy was made in bad faith, in order to impair Luxy's business and pressure Defendants into an unfair settlement. Opp. to Mot. for Joinder at 3. They also argue that Mr. Frybarger has not alleged that Luxy is a party to the Agreement, nor that Luxy is an Operating Affiliate of OWL. *Id.*

Plaintiff replies that, under Fed. R. Civ. P. 20(a)(2), "joinder of claims and parties is strongly encouraged." Reply at 1, quoting *United Mine Workers of America*, 383 U.S. at 724.

Because there are common questions of law and fact, Mr. Frybarger argues that Luxy should be joined. Reply at 1–2. He further emphasizes that denying joinder would result in a second suit against Luxy, which would be inefficient. *Id.*

The Court agrees.

As described above, courts typically take a permissive approach to joinder, permitting additional parties to be added where: (1) there is any right to relief asserted against them jointly, severally, or with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; or (2) where there are any questions of law or fact common to all defendants. Fed. R. Civ. P. 20(a). Here, both considerations weigh in favor of Luxy's joinder.

First, Mr. Frybarger has brought this suit based on a series of allegedly fraudulent activities on the part of Mr. Salemme, OWL, and Luxy. Indeed, transactions involving all three parties—the creation of Luxy and the subsequent transfer of assets from OWL to Luxy—are at the heart of Mr. Frybarger's complaint and the legal issues to be litigated in this suit. It is likely that, if liability were to be found, Luxy would be jointly liable with Mr. Salemme and OWL. Accordingly, the first prong of the test under Rule 20(a) clearly favors joinder.

Second, because these claims arise out of alleged transactions between Mr. Salemme, OWL, and Luxy, the questions of law and fact involved are common to all Defendants. As Mr. Frybarger has noted, whether Luxy is joined or not, it is likely that Luxy's employees will need to be called as witnesses or otherwise be involved in this litigation. If Luxy were not joined in this case, it is likely that Mr. Frybarger would file a separate lawsuit, raising the prospect of both inefficiency and inconsistent outcomes. In fact, the Southern District of Florida found that the most important factor weighing in favor of transferring the case to this District was the ability to

join Luxy as a Defendant, thereby "avoid[ing] the risk of duplicative litigation and allow[ing] this action to continue as to all Defendants." Order on MTD at 33.

Accordingly, the Court finds that "considerations of judicial economy and fairness" weigh in favor of Luxy's joinder under Rule 21. *Kalie*, 297 F.R.D. at 557; Fed. R. Civ. P. 21.

      B.  <u>Amending the Complaint</u>

Plaintiff has moved to amend the Complaint to include Luxy as a Defendant and to add several claims under Connecticut state law. As the Court has determined that joinder of Luxy is appropriate under Rule 21, Plaintiff's motion to amend will be granted as to adding Luxy. The Court thus turns to Defendants' arguments regarding Plaintiff's claims under Connecticut law.

Mr. Frybarger seeks to add the following four causes of action against Luxy: breach of contract under Conn. Gen. Stat. § 37-3a; intentional fraudulent transfer under Conn. Gen. Stat. § 52-552e(a)(1); constructive fraudulent transfer under Conn. Gen. Stat. § 52-552f(a); and successor liability under Connecticut common law. Mot. to Amend at 1–2.

Defendants advance several arguments against the specific claims sought to be added by Mr. Frybarger against Luxy. The Court construes these arguments in two ways, namely: (1) as allegations of bad faith or "dilatory motive" on the part of the Mr. Frybarger, and (2) as futile amendments that could not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Foman*, 371 U.S. at 182 ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave [to amend] sought should, as the rules require, be freely given.") (internal quotation marks omitted); *Lucente*, 310 F.3d at 258 (holding that while "leave to amend a pleading 'shall be freely given when justice so

requires' . . . [o]ne appropriate basis for denying leave to amend is that the proposed amendment is futile.") (quoting Fed. R. Civ. P. 15(a)).

### 1. Bad Faith

When determining what constitutes prejudice in the context of an amended pleading, the Second Circuit has held that courts should consider "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

Defendants have not provided any evidence—or even any specific allegations—that could support a finding of bad faith. Given that discovery has not yet begun, the addition of Luxy will not require the expenditure of additional resources or otherwise disturb trial preparations. Additionally, the addition of Luxy to this suit will likely prevent the filing of a separate suit, thereby avoiding calling the same witnesses—including the Defendants, OWL employees, and Luxy employees—multiple times to testify in different cases.

Accordingly, the Court will not deny leave to amend based on Defendants' bad faith argument.

### 2. Futility

"Proposed amendments are futile," and thus must be denied, "if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil

Procedure." *Thea v. Kleinhandler*, 807 F.3d 492, 496–97 (2d Cir. 2015) (internal quotation marks and citation omitted).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Under Rule 12(b)(6), any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to

dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

Here, Defendants argue that all four state-law claims that Plaintiff seeks to add to the Complaint fail to state a claim under Rule 12(b)(6), and that the Court should therefore deny the motion to amend. First, Defendants argue that Luxy is not a party to the Agreement giving rise to this action, so Plaintiff's breach of contract claim necessarily fails. Opp. to Mot. for Joinder at 3–4. Second, they argue that the claims of successor liability and fraudulent transfer are futile because Plaintiff has not alleged facts sufficient to establish that Luxy is an Operating Affiliate under the Agreement. *Id.* at 4. Third, Defendants argue that Mr. Frybarger has not pled facts with sufficient particularity to meet the elements of fraudulent transfer. *Id.* at 4–5. More specifically, they claim that Mr. Frybarger has not pled any facts that support a strong inference of fraudulent intent, as they claim is required under Conn. Gen. Stat. § 52-552e(a)(1), citing *Carney v. Lopez*, 933 F. Supp. 2d 365, 376 (D. Conn. Mar. 28, 2013). Defendants also argue that the fraudulent transfer claims fail because Mr. Frybarger has not sufficiently pled that he had a right to payment

under the Agreement prior to when the allegedly fraudulent transfer occurred while Defendants were indebted to him. Opp. to Mot. for Joinder at 5.

Mr. Frybarger responds that, at this stage of the proceedings, the merits of his claims are "irrelevant." Reply at 2. While he admits that there are outstanding questions of fact regarding the claims against Luxy, he asserts that he has pled facts that, if credited, would be sufficient to establish liability on all counts. *Id.* He reaffirms that Luxy was an Operating Affiliate, and that in that capacity it was subject to the Agreement. *Id.* Mr. Frybarger claims that he has sufficiently alleged some of the badges of fraud under Conn. Gen. Stat. §§ 52-552b(1) and 52-552b(7), which are sufficient to create an inference of fraudulent intent. *Id.* at 2–3. Finally, he argues that his allegations regarding his right to payment under the agreement are "contingent claims" which do not require him to allege that a particular revenue threshold has been met. *Id.* at 3; *see also* Conn. Gen. Stat. §§ 52-552b(3) and 52-552b(1).

In their sur-reply, Defendants argue that Mr. Frybarger's filings rely on an affidavit by him based on hearsay and therefore "incompetent." Sur-reply at 1. Defendants therefore argue that the Court should not rely on the affidavit in considering the pending motion for joinder and motion for leave to amend the complaint. *Id.*

The Court disagrees.

At this stage in the suit, Mr. Frybarger need only submit to the Court a "short and plain statement of the claim" that demonstrates an entitlement to relief. Fed. R. Civ. P. 8(a). Questions of fact or claims regarding the admissibility of evidence are premature and may not guide the Court at this time. *McCarthy*, 482 F.3d at 191 (when considering a motion to dismiss, courts should limit their review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the

complaint by reference."). While conclusory statements will not suffice, the allegations in the proposed Amended Complaint must be viewed in the light most favorable to Mr. Frybarger and all inferences must be drawn in his favor. *Cohen*, 711 F.3d at 359.

Mr. Frybarger has alleged that Luxy was an Operating Affiliate subject to the reporting requirements laid out in the Agreement. He has further alleged a breach of this Agreement through the failure to accurately and timely deliver the financial reports. Finally, he has alleged that Luxy was the recipient of the fraudulent transfer. Defendants contest these allegations, but at this stage in the proceedings, before discovery has been completed, such disagreements do not warrant dismissal. Mr. Frybarger's allegations therefore are sufficient to state a claim for breach of contract and successor liability upon which relief could be granted. *See Chiulli v. Zola*, 905 A.2d 1236, 1243 (Conn. App. Ct. 2006) ("The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages.") (internal quotation marks omitted); *Robbins v. Physicians for Women's Health, LLC*, 90 A.3d 925, 930 (Conn. 2014) ("A successor corporation may be held liable for the debts and liabilities of its predecessor when 'there is an express or implied assumption of liability,' 'the transaction amounts to a consolidation or merger,' 'the transaction is fraudulent,' or 'the transferee corporation is a mere continuation or reincarnation of the old corporation.' . . . [S]uccessor liability does not create a new cause of action against the purchaser so much as it *transfers* the liability of the predecessor to the purchaser[.]") (emphasis in original) (quoting 19 Am. Jur. 2d 424–25, Corporations § 2319 (2004)).

Defendants' arguments on the issue of fraudulent intent are similarly unpersuasive. Even in the case cited by Defendants, the court held that a pleader may rely on "badges of fraud[,] circumstances so commonly associated with fraudulent transfers that their presence gives rise to

an inference of intent." *Carney*, 933 F. Supp. 2d at 379 (quoting *In re Sharp Int'l*, 403 F.3d 43, 56 (2d Cir. 2005)). Badges of fraud include:

> (1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Conn. Gen. Stat. § 52-552e(b).

Mr. Frybarger has enumerated five badges of fraud under Conn. Gen. Stat. § 52-552e(b), including allegations regarding the structure of Luxy, Proposed Am. Compl. ¶¶ 51(a) & (f), ECF No. 55-2 (Mar. 24, 2023) ("Proposed Am. Compl."); Mr. Salemme's involvement in Luxy's affairs, Proposed Am. Compl. ¶ 51(b); and the nature of the allegedly fraudulent transfer, Proposed Am. Compl. ¶¶ 51(c)–(e). Under *Carney* and the relevant Connecticut statute, these allegations plainly meet pleading requirements and give rise to an inference of fraudulent intent. *See Carney*, 933 F. Supp. 2d at 379 (holding that, at the pleading stage, a plaintiff may rely on badges of fraud to give rise to an inference of intent); *Cook v. Bieluch*, 629 A.2d 1175, 1183 (Conn. App. Ct. 1993), cert. denied, 635 A.2d 1229 (1993), *abrogated on other grounds by Kaczynski v. Kaczynski*, 981 A.2d 1068 (Conn. 2009) ("The determination of the question of fraudulent intent is clearly an issue of fact which must often be inferred from surrounding circumstances . . . . Such a fact is, then, not ordinarily proven by direct evidence, but rather, by inference from other facts proven—the indicia or badges of fraud." (citations and internal quotation marks omitted)); *cf. In re Sharp Int'l Corp.*, 403 F.3d at 56 (Under New York law, "[d]ue to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader

16

is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." (quoting *Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 529 (1st Dep't 1999) (internal citations and quotation marks omitted)).

Finally, Defendants argue that Plaintiff has not sufficiently alleged a right to payment under the Agreement—a requirement of a fraudulent transfer claim—because he has not specifically alleged that any of the revenue thresholds specified in the Agreement have been met. But, as Plaintiff notes, Conn. Gen. Stat. 52-552b(3) explicitly defines a claim as "a right to payment, whether or not the right is . . . contingent[.]" Moreover, Mr. Frybarger has alleged that Defendants breached the Agreement in part by refusing to provide the required financial accounting reports, which would have allowed him to understand which revenue thresholds had been met by OWL and Luxy. Indeed, a significant part of Mr. Frybarger's breach of contract claim is that, in the absence of this information, he cannot accurately assess the exact amount to which he is entitled. It would be unreasonable, then, to dismiss his claims for fraudulent transfer because he has failed to include such information in his pleadings. *See Chapman Lumber, Inc. v. Tager*, 952 A.2d 1, 16 (Conn. 2008) ("Pursuant to Connecticut's ripeness jurisprudence, as long as it is clear that a plaintiff has suffered an injury sufficient to give rise to the cause of action alleged, a lack of certainty as to the precise scope of damages will not prevent the claim from being justiciable."); *cf. Larobina v. Home Depot, USA, Inc.*, 821 A.2d 283, 288 (Conn. App. Ct. 2003) ("The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . The words 'any ascertainable loss' [however] . . . do not require a plaintiff to prove a specific amount of actual damages in order to make out a prima facie case." (internal quotation marks

omitted) (citing *Johnson Electric Co. v. Salce Contracting Associates, Inc.*, 805 A.2d 735, 743 (Conn. App. Ct. 2002), cert. denied, 812 A.2d 864 (Conn. 2002); *Hinchliffe v. American Motors Corp.*, 440 A.2d 810, 815 (Conn. 1981))).

Accordingly, having found neither any evidence of bad faith nor futility with respect to any of the state law claims Plaintiff seeks to add against Luxy, Mr. Frybarger's motion for leave to amend the Complaint will be granted.

## IV.    CONCLUSION

For the reasons explained above, the Court **GRANTS** the motion to join Luxy as a party Defendant. The Court also **GRANTS** the motion for leave to amend the Complaint.

**SO ORDERED** at New Haven, Connecticut, this 2nd day of February, 2024.

     /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge